Good morning judges. My name is Andre Wooten and I am the attorney for the plaintiff appellant Stephanie Stucky in this case and within the 10 minutes that we have we would like to make at least four points. This Stucky filed a complaint for damages for violation of her civil rights in this case pertaining to a notice of termination that was based upon a prior suspension. In this particular case the district judge acknowledged that the plaintiff had established a prima facie case. Well apparently since there is not a lot of time let's go to the pretext. What evidence did you present to the district court to show that the reasons for Ms. Stucky's suspension and termination were pretextual? The 35 exhibits that we presented, the declaration of Ms. Stucky, the declaration ultimately of... Be more specific than that. I don't want just that what is the evidence? It doesn't say you can just say it's a declaration because the declaration could say blah blah blah blah blah that wouldn't be necessarily the evidence. What's the evidence of pretext that you pointed out to the district court? Well part of the problem is that the court erred in ignoring a lot of the evidence that we pointed out. The declaration of Ms. Stucky does indeed encapsulate most of it and it talks about specific instances of discriminatory conduct. The principal removed her position from the school staff improperly and attempted to eliminate her position. She filed a civil rights complaint and a grievance and eventually got that overturned and thereafter there was retaliation against her in terms of moving her classes around. She moved her from a music room into an old cafeteria room which wasn't set up for musical instruments. I mean musical instruments are expensive and there was no place to lock these instruments up to secure them. When she complained about that the principal retaliated against her. Moreover this cafeteria was infested with fleas. It was infested with rats. When the students complained about these things Ms. Stucky had to talk to the parents and the principal criticized her for doing so. A teacher has a right to a first amendment right to engage in conversations pertaining to reasonable things having to do with her job. But you say those things but I'm looking at her declaration and she refers to the staff reduction attempt and her statements weren't based on any personal knowledge in their conclusory. For example she declares that Kilborne unilaterally sought to get rid of plaintiff by striking her music class. But you've got to put in evidence if you want to conclusion. If you read further into her declaration and Kilborne's declaration says that the art department voted to do so. Oh my Ms. Stucky who is present was the chairman of the art department and there was no vote and her declaration points out that this was a unilateral act by the principal which she claimed was a vote of the department and Ms. Stucky being the chairperson of the was no such meeting there was no such vote and consequently that is indeed a reasonable question of fact for the jury. Furthermore Ms. Stucky was suspended supposedly for not taking appropriate action when a student in her orchestra class and we're talking about a class of over 100 students in an orchestra class but students were combined. Anyway a bench collapsed through no fault of Ms. Stucky's claim that she was hurt. The girl's friends. Are you disputing that she was hurt? Yes we are. We're disputing that she was seriously injured. We're not disputing that she cried but the medical records indicate that she was not seriously hurt and one of the reasons for that was she was wearing a metal brace on her ankle because of a pre-existing injury and that brace according to the doctor prevented any serious injury and consequently the argument can be made that that was sort of a made-up situation by the student in order to get out of the class. Counsel most of the evidence that you that you provided to us the instances you cited to Judge Callahan go to the question of retaliation and the district court has said you've made out a prima facie case of retaliation. At that point it then becomes the state's burden to come back and show a reason for termination which the district court said they've done. The burden then goes back to you to show that their reasons are pretextual. So citing the retaliation evidence is not going to satisfy your burden of pretext. So what evidence do you have that the firing was pretextual? Well number one is the fact that Ms. Stucky had filed a series of complaints EEO complaints and civil rights complaints. That all goes to retaliation. What's pretextual? I understand the retaliation claims and the district court said and we will and I think we're going to have to accept today that you have made out a prima facie case of retaliation. Now how can you show that the termination was pretextual? The Department of Education did not follow its own rules and regulations in terminating Ms. Stucky. There was no due process hearing. Indeed there still has not been a due process hearing for her to be appraised of the allegations against her. Indeed at the meeting in which the principal gave her the termination notice, that notice was a single piece of paper. It was not backed up by the so-called statements, the argument of the department and Ms. Stucky was not presented with that until a couple of months later. That was a serious due process violation. The grievance hearings in this particular matter were suspended and have never been held and consequently there's never been an appropriate opportunity for Ms. Stucky to present her arguments in contradiction to the allegations made against her. Also with regard to pretext, we're arguing that this is a hostile work environment situation under National Railroad and under the Lyons case. We're specifically arguing that when the district judge ruled that he did not have to consider the factual allegations of discrimination and retaliation in a previous case that he had dismissed regarding Ms. Stucky and the DOE were irrelevant. We believe that that is incorrect. We concede that Ms. Stucky could not have a cause of action based upon those facts and allegations, but we concede, we argue that based upon National Railroad and the Lyons case that that was part of the race just die, that was part of the history of the case. Well the problem is even if you may be correct that the facts from that Stucky 1, we'll call it, could be considered for pretext, you don't point out what the evidence was on that. It still comes back to when on pretext you have a burden then that you've got to point out evidence to the court from that. You can't just say, hey look at Stucky 1 and all of that background, incorporate that by reference and you've got to do more than that. Well no, I would point to exhibits, certainly 25, 26. But did you point that, other than just say to the district court, hey look at Stucky 1 and that's our evidence of pretext, did you point to anything specific or were you just did that generally like you just wanted to do right now? Yes we did. We pointed specifically to exhibits 25, 26, 27. Those are letters from Eric Nagamini who was Ms. Stucky's union representative who was raising questions and challenging the lack of due process that the state imposed upon Ms. Stucky in terms of adopting the arguments of parents as opposed to teachers to use as justification for terminating her. They used unverified statements and inaccurate statements. One of the problems in this particular case is that we attempted to introduce the declaration of union representative Sam Moore and during the course of this Mr. Moore suddenly came down with because we had worked with the union on a number of cases over the years and never had any problems dealing with the union reps in terms of getting some cooperation. However, Mr. Moore suddenly became unavailable for reasons that are medical and were confidential and so we couldn't get an explanation of that until Mr. Moore reappeared about a month later and said that he'd been in the hospital being examined for stomach cancer and subsequently he took leave off in order to undergo chemotherapy and surgery and all that sort of things. But he was available long before that and you never attempted to depose him, correct? He had agreed to give us a deposition and so based upon that agreement we did not attempt to depose him until we found out that he was sick. At that point the state had already set up a deposition of him and one of the errors that we are arguing is that under those unique circumstances the court should have accepted his declaration because his declaration does indeed go through Well can you get into the whole problem of where you submitted something to the court that was that you got into the court and the court found bad faith? Yes and that is troubling indeed. I pointed out that in an exhibit to my Troubling from what perspective? Argument, well it was troubling I mean it's troubling to me that you would do that as an officer of the court and it's also troubling to me that you attempted in that to blame the district court saying well if they had followed their procedures then you wouldn't have been able to do it in the first place and that's basically how the fraud was perpetrated on the court. Well there was no fraud perpetrated on the court I wouldn't have stolen the money if I hadn't left my wallet on the bench No money was stolen. There was no attempt to sign Mr. Moore's signature. Mr. Moore had given me those words. The declaration that Mr. Moore created later confirms to the original one with certain grammatical changes and indeed his 114 page deposition lays out in clear detail the violations of the union contract and the lack of due process that was used for a pretext to terminate Ms. Stuckey in this particular case. Ms. Stuckey is or was a 25 year teaching veteran at this point in time. She had never received any negative evaluations or any warning evaluations and suddenly after filing a couple of EEO cases challenging her treatment she's suddenly an incompetent teacher. In the particular situation that they used to suspend her, supposedly not taking this student to the nurse's office, Mr. Moore testified in his deposition that he had cases where teachers had done that and they were cited for leaving their class unattended and it's a balancing act that a teacher has to make. I'm responsible for all these kids. Do I go to the nurse's office with one and leave the hundred behind that she's also responsible for? In this particular case Ms. Stuckey knew that other teachers had been sanctioned for doing that and she assured that older friends of the girl, students, accompanied her to the medical office and so consequently she was taken care of. The fact that they used that dubious situation to suspend her when the medical evidence shows that the girl was not injured in any serious manner, shape or form is evidence that there clearly was a pretext in this case because that suspension, which has still never gone through the grievance process, there's still never been a due process opportunity for Ms. Stuckey to present her evidence regarding that, especially since there hasn't been a trial, Ms. Stuckey has never had a due process in this matter at all. We do point out that a deputy corporation counsel attorney did the exact same thing as I did, but he wasn't sanctioned. I assumed based upon Mr. Moore's statement that he was going to edit, look at and sign the declaration. That's what he said. I emailed him the same thing the same day that we talked. I was totally shocked and surprised that he was absent for so long, but you know, when people come down with cancer, those things are confidential and nobody in his office would explain why he was absent. So you put his signature on the declaration? I didn't sign his signature, no. You put electronically the signature? The other thing I want to say, at this point in time, we were learning the new electronic filing system and in this by myself in filing things. Some things I was filing the old-fashioned way, you know, and the declaration was won. We indicated that he was going to sign it. He indicated to us that he was going to sign it, but we did not try to sign his signature or forge his signature. We were going to supply his active declaration. Under the circumstances, because his cancer disease was a surprise, we certainly argue that that is a proper case under Bateman of a surprise to excuse the attorney's neglect in that case. Thank you for imposing cancer. Good morning. Nelson Labetta for the state of Hawaii. May it please the court. There's no evidence of pretext in this matter. What there is is an irregularly scheduled evaluation for Ms. Stuckey and it was found on so many levels that she was an unsatisfactory teacher. Also, this case represents an investigation of misconduct on Stuckey's case when she failed to properly attend to one of her students who were injured. Did the state follow the hearing? She was given notice. She was not given the backup. The grievance hearings were never held. Your Honor, I believe there was no due process problem. What is in the declaration or rather the argument of this case is that she was not given the backup documents or the documents upon which the principal had recommended the unsatisfactory evaluation. Yet, if we look at, I believe it's called Exhibit 740 of Ms. Stuckey as well as Exhibit, I believe it's 24. There's indications that she had in fact within days, excuse me, Exhibit 740 and given a hearing? That I'm not sure. It's not in the record, Your Honor. Why wouldn't, under what circumstances would she not be entitled to a hearing? Your Honor, she may not be entitled to a hearing in the sense that if she wasn't terminated. Wait, I'm sorry. She wouldn't be entitled to a hearing if she wasn't terminated? That's correct. Well, was she terminated? I don't think she was, Your Honor. Not at this time. Okay. Has she been terminated since? I believe so, yes. Okay. Was she given a hearing? I believe that might be pending, but I have no information as to whether or not she had that final hearing. And, Your Honor, that would be different from a hearing pursuant to a grievance on the collective bargaining agreement. Okay. Was she given a grievance hearing under the CBA? Your Honor, I don't think it was scheduled. Was that her option? It is a scheduling matter between both the union and the department. Okay. So who's got the responsibility for scheduling the hearing? I think it's both under agreement. Okay. So either one of them can ask for a hearing? Yes. Did she ask for a hearing? I would presume that she would want a hearing if she filed a grievance, yes. Did she get a hearing? I don't think so. Okay. Would the fact that she asked for a hearing on her dismissal or suspension and was not given a hearing be evidence of the county's pretext? Yeah, the Department of Education's pretext? So if she was terminated from her job, she says, I want a hearing, and they don't give her a hearing, is that evidence of pretext? It could be, Your Honor, yes. Although before the court, Your Honor, is not the termination, whether it happened or it didn't happen. It is the unsatisfactory rating. And with regard to the rating, Your Honor, what she's claiming is that I didn't get the backup documents that the court had indicated. But her own declaration does not complain of that, not in itself. What she does is she attaches exhibits, and two of those exhibits indicate that she actually had those backup documents. Therefore, there's no pretext that she could assert before the court in this case. She also indicates that there's animus on the part of her principal, Katherine Kilborn. She says that the principal had solicited complaints from the students and teachers, but there's no evidence of that. She says that it's animus because I'm such a good teacher, but there's no one except for herself that says she's actually a good teacher. In fact, of the 212 pages of backup documents, it says otherwise. Not one document, not one letter of recommendation, not even the union says she's a good teacher. What counsel indicated is that pretext can be somehow implied by looking at the prior incidents. However, the case that counsel relied upon, Lyon v. England, indicates otherwise. First, these prior incidents were not untimely. They're not something that were never adjudicated. The judge in Stucky 1 had already dismissed these cases based upon her inability to show pretext. Second, these prior cases, because of the fact that she couldn't show pretext in the prior case, are not relevant to show pretext now. Well, I don't know that the facts can't be, if they weren't sufficient to show pretext relative to that charge, but the existence of the facts, if counsel had pointed to them, I mean, counsel just basically said Stucky 1 should be considered as background in order to establish pretext in Stucky 2. But, I mean, pretext requires something more specific on the part of, you know, to point to specific evidence that would establish that. So just pointing to Stucky 1 isn't sufficient, but there might be some facts in there that I think could, in fact, legally be considered, but I don't know what they are. And that's part of the problem. I mean, I think your approach is a little bit too narrow in just saying, well, Stucky 1's decided, Stucky 1's gone, and nothing that occurred in that situation can flow over to this particular lawsuit. But, Your Honor, if we take the other approach and say that, well, for example, the prior incidents might be relevant to show pretext, but they're not sufficient, even if we assume that they're relevant. Even if you assume that the court didn't rule on them beforehand, they're not relevant because they don't rebut in any way the 212 pages that are used as a backup to the evaluation. Well, the problem is I don't know what he was – I don't know what appellant is alleging to from Stucky 1 other than just Stucky 1 the whole thing, and I don't think a court's required to – we're not required to sift through everything in Stucky 1 just to pull out things. All right, go ahead. And finally, Your Honor, even if we assume these things are relevant, the fact that we have complaints from parents and teachers about the abuses in the classroom, the name-calling, the favoritism, we have complaints of other teachers that their classroom curriculum was disturbed by Stucky. We have the defiant attitude that Stucky consistently refused to undergo remedial training as well as submitting to the teachings of a mentor, for example. All of these things indicate that the evaluation of Ms. Stucky was not based upon animus or other inappropriate matters but just the fact that she was a poor teacher. Thank you very much. Thank you. Mr. Wood, would you like to make a rebuttal? Just briefly, I guess over time, but Judge Callahan was talking about Stucky 1, and we attempted to make that argument during the hearing, but Judge Seabright cut us off saying that I know all about that, I've dismissed that, I don't want to hear that. So, you know, I mean, we did present that, I believe, as part of our exhibits, but there's no argument about it because, you know, Judge Seabright said he specifically didn't want to hear it, so I didn't go there. However, we would say that certainly under National Railroad and under Lyons, the totality of the circumstances, even events that occurred a year or two before, if they are similar and if they do indicate a pattern in practice, they are relevant with regard to matters that Judge Seabright should have considered, and consequently, based upon the minimal standard that the plaintiff needed to establish, Ms. Stucky should have had a trial in this matter, and we asked for the court to allow her to have one. Okay, thank you. Case is argued with 10 minutes.
judges: Kozinski, Bybee, Callahan